UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BOBBY SMITH (#104536)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 08-698-JVP-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, June 19, 2009.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BOBBY SMITH (#104536)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 08-698-JVP-SCR

MAGISTRATE JUDGE'S REPORT

Before the court is the application of petitioner Bobby Smith for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner was found guilty of two counts armed robbery and one count conspiracy to commit armed robbery in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana on January 26, 2001.  Petitioner received concurrent sentences of 58 year imprisonment at hard labor without benefit of parole, probation or suspension of sentence on each count of armed robbery.  Petitioner was sentenced to 29 years imprisonment at hard labor on the conspiracy to commit armed robbery count, the sentence to be served concurrently with the other sentences.

Petitioner's convictions and sentences were affirmed on appeal.  *State of Louisiana v. Bobby Smith*, 2003-1263 (La. App. 1st Cir. 4/2/04), 870 So.2d 646 (Table).  Petitioner's application for supervisory review was denied by the Louisiana Supreme Court. *State of Louisiana v. Bobby Smith*, 2004-1304 (La. 12/10/04), 888 So.2d 837.

Petitioner filed an application for post-conviction relief in the trial court asserting five grounds for relief: (1) the State withheld exculpatory evidence and introduced false testimony; (2) the trial court erred when it failed to give a cautionary jury instruction; (3) the jury instruction on principals was erroneous; (4) trial counsel interfered with his right to testify; and, (5) the petitioner received ineffective assistance of counsel at trial and on appeal.

On September 26, 2006, the trial court denied relief on the petitioner's application specifically relying on La.C.Cr.P. art. 930.4. Petitioner sought review by the appellate court. On July 10, 2007, the Louisiana First Circuit Court of Appeal denied review. *State of Louisiana v. Bobby Smith*, 2007-0961 (La. App. 1st Cir. 7/10/07). Petitioner sought review by the Louisiana Supreme Court, which denied review on June 6, 2008. *State ex rel. Bobby Smith v. State of Louisiana,* 2007-1724, (La. 6/6/08), 983 So.2d 910.

Petitioner signed his federal habeas corpus application on October 27, 2008, and it was filed on October 28, 2008. Petitioner raised the following grounds for relief: (1) there was insufficient evidence to support his armed robbery and conspiracy to commit armed robbery convictions; (2) the prosecutor withheld exculpatory evidence and introduced perjured testimony; (3) the trial court erred when it failed to give a cautionary jury instruction

regarding the prosecutor's reference to his co-defendants' convictions;(4) the trial court gave an erroneous jury instruction on the law of principals; (5) trial counsel interfered with his right to testify; (6) he received ineffective assistance of counsel at trial and on appeal; and (7) during jury selection, the State exercised its peremptory challenges in a racially discriminatory manner.

Petitioner has exhausted his state court remedies.

Section 2254(d) of Title 28 of the United States Code provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) provides as follows:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Subsection (d)(2) of § 2254 applies to a state court's factual

3

determination.  It bars federal court relief unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence."  Subsection (d)(1) provides the standard of review for questions of law and mixed questions of law and fact.  *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997).

The second clause of subsection (d)(1) refers to mixed questions of law and fact because it speaks of an "unreasonable application of ... clearly established Federal law."  When the issue before the court is a mixed question of law and fact, the court may grant relief only if it determines that the state court decision rested on "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court," to the facts of the case.  The first clause of subsection (d)(1) refers to questions of law.  When the issue raised involves a purely legal question, the court may grant relief only if it determines that a state court's decision rested on a legal determination that was "contrary to...clearly established Federal law, as determined by the Supreme Court."  *Id*.

**Ground 1: Insufficient Evidence**

In his first ground for relief, the petitioner argued that there was insufficient evidence to support his armed robbery and conspiracy to commit armed robbery convictions.

4

The standard for gauging the sufficiency of the evidence to support a conviction is well established. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (emphasis in original).  Even if state law would impose a more demanding standard of proof, only the *Jackson* standard must be satisfied to maintain the constitutionality of a conviction. *Gilley v. Collins*, 968 F.2d 465 (5th Cir. 1992); *Schrader v. Whitley*, 904 F. 2d 282, 284 (5th Cir.), *cert. denied*, 498 U.S. 903, 111 S.Ct. 265 (1990).  The evidence may be found sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence.  *Gilley*, *supra*; *Gibson v. Collins*, 497 F.2d 780, 783 (5th Cir. 1991).  The *Jackson* standard applies to both bench and jury trials.  *Jackson*, 433 U.S. at 309, 311 and n. 3, 317 n. 8, 99 S.Ct. at 2783, 2785 and n. 3, 2788 and n. 8.

The substantive elements which the state must prove in order to convict a defendant are determined by state law.  At the time of the petitioner's offense, armed robbery included "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."  LSA-R.S.

5

14:64.

At the time of the petitioner's offense, criminal conspiracy was defined as follows:

> A. Criminal conspiracy is the agreement or combination of two or more persons for the purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

LSA-R.S. 14:26.

Gwendolyn Collier testified that on September 27, 1999, she was employed at Local Finance, 3135 Government St., Baton Rouge, Louisiana.[1] Collier testified that between 3:30 p.m. and 4:30 p.m. that day, three men entered Local Finance and robbed her and Geraldine Bernd, another employee.[2] Collier testified that the petitioner's co-defendant, Carleton Pindexter, entered Local Finance first and stood by the door.[3] Pindexter was not armed and he remained by the door throughout the robbery.[4] Collier testified that a short time later two more men entered Local Finance and proceeded to the counter; one of the two men was tall and thin and was armed with a sawed-off shotgun while the other man was short

---

[1] Trial Transcript, p. 16.

[2] *Id.* at 16-17.

[3] *Id.* at 19-20.

[4] *Id.* at 20.

and had a gold tooth.[5]  Collier testified that the armed man instructed Bernd to back up and then jumped over the counter and stood next to Bernd.[6]  The armed man then asked, "Where is the money?"[7]  Collier testified that while she removed money from her desk drawer the man who entered with the armed man jumped over the counter.[8]  Collier testified that she held the money bag out and told the armed man that she had the money.[9]  Collier testified that the armed man handed the shotgun to the other man and took the money bag from her.[10]  Collier testified that the man who then had the shotgun pointed it at Bernd.[11]  Collier testified that the man who took the money bag opened it and demanded to know where the hundred dollar bills were.[12]  Collier testified that she told the man that there was more money in the drawer located on the counter.[13]  Collier testified that the two men behind the counter removed money from the drawer and then ordered her and Bernd to lay

---

[5] *Id*. at 19; 21; 28-29.

[6] *Id*. at 22-23.

[7] *Id*. at 23.

[8] *Id*. at 24.

[9] *Id*. at 25.

[10] *Id*.

[11] *Id*. at 26.

[12] *Id*. at 25.

[13] *Id*. at 26.

down.[14]  Collier testified that the two men jumped back over the counter.[15]  Collier testified that after five minutes she and Bernd assumed the men were gone and they got up off the floor.[16]  Collier testified that she identified Pindexter in a photographic lineup conducted by police but did not identify the other two robbers.[17] At trial, Collier identified Smith as the tall, skinny robber who entered Local Finance armed with the sawed-off shotgun.[18]

Bernd testified that on the day of the robbery Pindexter walked into the office and was followed by two black men.[19]  Bernd testified that Pindexter had been in the office earlier that day inquiring about a loan.[20]  Bernd testified that the other two men approached the counter, and one pointed a shotgun at her face, telling her, "Step back, bitch."[21]  Bernd testified that she stepped back and the two men jumped over the counter.[22]  Bernd testified that the armed man ordered her to lay down on the floor and asked

---

[14] *Id.* at 27.

[15] *Id.*

[16] *Id. at 28.*

[17] *Id.* at 30-32; 42; 53.

[18] *Id.* at 40-41; 68.

[19] *Id.* at 72; 76.

[20] *Id.* at 72-73.

[21] *Id.* at 76.

[22] *Id.* at 77.

8

Collier for the money.[23]  Bernd testified that the armed man handed the shotgun to the other robber, took the money bag from Collier and ordered her to lay down.[24]  Bernd testified that Collier complied and the two men jumped back over the counter and left.[25] Bernd testified that Pindexter acted as a lookout during the robbery.[26]  Bernd could not identify Smith as one of the robbers.[27]

Mac Babin testified that he was a former Baton Rouge police officer who retired in 1990 after serving 29 years on the police force.[28]  Babin testified that on the afternoon of the robbery, he observed a man park an older model two-door Buick LeSabre in front of his neighbor's house, exit the car and walk towards Government Street.[29]  Babin testified that the man looked nervous and had a bandana around his neck.[30]  Babin testified he became suspicious, got a pad and went and sat on his neighbor's porch where he jotted down the license number and different identifying characteristics of the vehicle, including the fact that a coat hanger was being

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 78.

[27] *Id.*

[28] *Id.* at 86, 90, 91.

[29] *Id.* at 87-89.

[30] *Id.* at 88.

used as the car's antenna.[31]  Babin testified that a few minutes later he observed three males walking hurriedly on Beverly Street who then got into the vehicle and drove away.[32]  Babin testified that he telephoned the police station, inquired whether there had been an armed robbery report, and provided the vehicle description and license number.[33]

Tamara Bindon testified that in September 1999 she owned a two-door 1984 Buick LeSabre.[34]  Bindon testified that on September 27, 1999, she was not in possession of her vehicle, having loaned the vehicle to Pindexter, a friend of her husband.[35]  Bindon testified that her vehicle was returned with a broken antenna and a clothes hanger inserted where the antenna had been located.[36]

Pindexter testified that he had been convicted of the September 27, 1999 armed robbery of Local Finance.[37]  Pindexter testified that during a taped interview conducted by police on September 28, 1999, he told the police that the petitioner was

---

[31] *Id.* at 89.

[32] *Id.* at 90.

[33] *Id.*

[34] *Id.* at 94.

[35] *Id.* at 95.

[36] *Id.* at 96.

[37] *Id.* at 111.

involved in the armed robbery.[38]   At the trial Pindexter testified
that he did not commit the armed robbery, that he did not know the
petitioner, and that police held a gun on him and forced him to say
the petitioner was involved in the armed robbery.[39]   Pindexter
testified that the petitioner had nothing to do with the armed
robbery.[40]   Pindexter testified that on September 27, 1999, he was
in possession of Bindon's Buick LeSabre and was in possession of
the vehicle when he was arrested for the armed robbery.[41]

A careful review of all the evidence, viewed in the light most
favorable to the prosecution as required by *Jackson*, supports the
finding that there was sufficient evidence to support the
petitioner's convictions.

Petitioner's insufficiency of the evidence claim has no merit.

### Ground 2: Withholding Exculpatory Evidence and Introduction of Perjured Testimony

In his second ground for relief, the petitioner argued that
the prosecutor withheld exculpatory evidence and introduced
perjured testimony.   Specifically, the petitioner argued that
during his initial police interrogation, Pindexter identified
Michael Joseph, a/k/a Snoop Dog, as the third individual involved

---

[38] *Id*. at 113-115; 117; 120-121.

[39] *Id*.

[40] *Id*. at 138.

[41] *Id*. at 125.

in the armed robbery.  Petitioner argued that the prosecution suppressed the identity of Michael Joseph and knowingly introduced Pindexter's perjured testimony.  Petitioner relied upon an affidavit executed by Pindexter on January 31, 2005 in support his claims.

The prosecution's suppression of material evidence favorable to the accused violates due process regardless of whether or not the prosecution acted in good faith or bad faith in failing to make a timely disclosure of the evidence. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196 (1963); *Jones v. Butler*, 864 F.2d 348, 354 (5th Cir. 1988), *cert. den.*, 490 U.S. 1075, 109 S.Ct. 2090 (1989).  To be entitled to federal habeas corpus relief, the petitioner must show: (1) the prosecution suppressed evidence, (2) the suppressed evidence was "favorable to the accused," and (3) the evidence was "material" either to guilt or punishment. *Brogdon v. Butler*, 790 F.2d 1164, 1167 (5th Cir. 1986), *cert. den.*, 481 U.S. 1042, 107 S.Ct. 3245 (1987).  Evidence that is "favorable to the accused" includes evidence that tends directly to exculpate the accused as well as evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763 (1972); *Porretto v. Stalder*, 834 F.2d 461, 464 (5th Cir. 1987).  The touchstone of materiality is a "reasonable probability" of a different result. *Kyles v. Whitley*,

514 U.S. 419, 115 S.Ct. 1555, 1566 (1995). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*.

It is a violation of the Fifth and Fourteenth Amendments to the United States Constitution for the prosecution to knowingly use perjured testimony. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 (1959). In order to establish a *Napue* violation, the petitioner must show (1) the statements in question are actually false.; (2) the prosecution knew that the statements were false; and (3) the statements were material. *United States v. Haese*, 162 F.3d 359, 365 (5th Cir. 1998).

In his affidavit Pindexter stated the petitioner was not with him and Scott on September 27, 1999; that the third person "was someone else that is call Snoop Dog." More importantly, however, Pindexter denied that he provided this information to the detectives during his interrogation following his arrest. Specifically, Pindexter stated that he "did not state the facts of the alleged crime during Detectives questioning about the Armed Robbery on the date of September 27, 1999 of Local Finance, Corp." Pindexter conceded that he "did implicate [petitioner] Bobby Smith also known as Snoop Dog" because he did not want to "implicate my associate Michael Joseph, A.K.A. Snoop Dog."

13

Because Pindixter did not implicate someone else as the third robber, namely Michael Joseph, in his statement to the detectives, there was no exculpatory evidence withheld nor any perjured testimony introduced by the prosecution.   Petitioner's *Brady* and *Napue* claims are without merit.

**Ground 3: Failure to Give Cautionary Jury Instruction;**
**Ground 4: Erroneous Jury Instruction;**
**Ground 5: Right to Testify in Own Defense**

In his third ground for relief, the petitioner argued that the trial court erred when it failed to give a cautionary jury instruction regarding the prosecutor's reference to his co-defendants' convictions.   In his fourth ground for relief, the petitioner argued that the trial court gave an erroneous jury instruction on the law of principals.   In his fifth ground for relief, the petitioner argued that trial counsel interfered with his right to testify.

The state district court denied review of the petitioner's cautionary jury instruction, erroneous jury instruction and right to testify claims because the record did not reflect that the petitioner made appropriate contemporaneous objections during trial, and also on the ground that the claims are procedurally barred.   Commissioner's Report, pp. 2-3; La.C.Cr.P. arts. 841 and 930.4.

When a state court decision to deny post conviction relief

14

rests on a state law ground that is independent of the federal
questions raised by the petitioner and is adequate to support the
judgment, the federal courts lack jurisdiction to review the merits
of the petitioner's federal claims. *Coleman v. Thompson*, 501 U.S.
722, 729, 111 S.Ct. 2546, 2553 (1991); *Moore v. Roberts*, 83 F.3d
699, *reh. denied*, 95 F.3d 56 (5th Cir. 1996).  The independent and
adequate state ground doctrine "applies to bar federal habeas when
a state court decline[s] to address a prisoner's federal claims
because the prisoner ha[s] failed to meet a state procedural
requirement." *Coleman*, at 729-730, 111 S.Ct. at 2554.

> In the absence of the independent and adequate state
> ground doctrine in federal habeas, habeas petitioners
> would be able to avoid the exhaustion requirement by
> defaulting their federal claims in state court.  The
> independent and adequate state ground doctrine ensures
> that the States' interest in correcting their own
> mistakes is respected in all federal habeas cases.

*Id.*, at 731-32, 111 S.Ct. at 2554-55 (quoting *Rose v. Lundy*, 455
U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982)); *Moore*, *supra*, at 703.

     For the independent and adequate state ground doctrine to
apply, the state courts adjudicating a habeas petitioner's claim
must explicitly rely on a state procedural rule to dismiss the
petitioner's claims.  *Moore*, *supra*, at 702; *Sones v. Hargett*, 61
F.3d 410, 416 (5th Cir. 1995).  The procedural default doctrine
presumes that the "state court's [express] reliance on a procedural
bar functions as an independent and adequate ground in support of
the judgment." *Id*.  Petitioner can rebut this presumption by

15

establishing that the procedural rule is not "strictly or regularly followed." *Id*. Even if the state procedural rule is strictly and regularly followed, the petitioner can still prevail by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565; *Moore*, *supra*, at 702.

Petitioner did not even attempt to establish that the procedural rule of Articles 841 and 930.4 have not been "strictly or regularly followed," *Sones*, at 416, by the Louisiana state courts. It is well-settled that the contemporaneous objection rule is an independent and adequate state procedural ground. *Duncan v. Cain*, 278 F.3d 537 (5th Cir. 2002). Moreover, a search of reported decisions referencing La.C.Cr.P. art. 930.4(C) showed that the procedural bar is strictly and regularly followed. *Roy v. Cain*, 792 So.2d 3 (La.2001); *State ex rel. Brister v. State*, 775 So.2d 1079 (La. 2000); *State ex rel. Baylis v. Maggio*, 464 So.2d 1370 (La. 1985); *State v. Gaines*, 701 So.2d 688 (La. App. 4th Cir.1997), *writ denied*, 717 So.2d 1160 (La. 1998); *State v. Ballom*, 520 So.2d 476 (La. App. 4th Cir.), *writ granted on other grounds*, 523 So.2d 860 (La. 1988).[42]

---

[42] In one case, *State v. Butler*, 405 So.2d 836 (La. 1981), the restriction was not applied. However, an occasional "act of grace"

(continued...)

16

Petitioner has not shown cause for his procedural default, or actual prejudice resulting from it.  Nor has the petitioner made a showing to support a claim of factual innocence.

**Ground 6: Ineffective Assistance of Counsel**

In his sixth ground for relief, the petitioner argued that he was denied effective assistance of counsel at trial and on appeal. Specifically, the petitioner argued that trial counsel was ineffective when he: (1) failed to object to the jury instruction on principals; (2) failed to request a cautionary jury instruction regarding the prosecutor's reference to his co-defendants' convictions; and (3) interfered with his right to testify. Petitioner argued that appellate counsel failed to  assign the same claims as error on appeal.   No aspect of the petitioner's ineffective assistance of counsel claim has merit.

To obtain habeas relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below

---

[42](...continued)
in entertaining the merits of a claim that might be viewed as procedurally defaulted does not constitute a failure to strictly or regularly follow the rule at issue. *See Hogue v. Johnson*, 131 F.3d 466, 487-88 (5th Cir. 1997).

17

an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. at 2064; *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511 (2000). There is a strong presumption that counsel performed adequately and exercised reasonable professional judgment. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). "[A] conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness". *Id.* (internal quotation marks omitted). However, there is a distinction between strategic judgment calls and plain omissions. *See Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir. 1992). The court is "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999).

To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence. *Id.* at 693-94, 104 S.Ct. at 2068; *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1983)(petitioner required to show that counsel's

deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).   Stated differently, a constitutional trial error is harmful only if there is "more than a mere reasonable possibility that it contributed to the verdict." *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999).

### 1. Failure to Object to Jury Instruction on Principals

In the first component of the petitioner's ineffective assistance of counsel claim he argued that his trial counsel rendered ineffective assistance when he failed to object to the jury instruction on principals.   Petitioner argued that the jury instruction relieved the State of its burden of proof as to the petitioner's specific intent to commit armed robbery.

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Sandstrom v. Montana*, 442 U.S. 510, 520, 99 S.Ct. 2450, 2457 (1979).   However, the fact that the instruction was allegedly incorrect under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71, 112 S.Ct. 475, 482 (1991).   Instead, the court must focus on "whether the ailing instruction by itself so infected the entire trial process that the resulting conviction violates due process." *Id*.   In examining the challenged instruction, the court does not look at it in "artificial isolation," but must consider it in the "context of the instructions as a whole and the trial

record." *Id*.  Finally, when there is a question of whether a jury instruction is ambiguous and violates due process by relieving the state of the burden of proof of an element of a crime, the question before the court is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."  *Id*. at 482 & n. 4; *accord Flowers v. Blackburn*, 779 F.2d 1115, 1119 (5 th Cir.), *cert. denied,* 475 U.S. 1132, 106 S.Ct. 1661 (1986).

In relevant part, the trial court charged the jury as follows:

> [C]riminal intent may be specific or general.  Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.  General criminal intent is present when the circumstances indicate that the defendant must have averted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.  General criminal intent is always present when there is specific intent.  Now, whether criminal intent is present must be determined in light of ordinary experience.  It is a question of fact which may be inferred from the circumstances.  You may infer that the defendant intended the natural and probable consequences of his acts. . . . All persons concerned in the commission of a crime whether present or absent and whether they directly commit the act constituting the offense aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime are principles(sic).

Jury Charge Transcript, p. 8-9.

Petitioner argued that rather than requiring a finding that he had the specific intent to commit armed robbery, the jury instruction suggested that if the jury found that his co-conspirators had the specific intent to commit armed robbery, that

intent could be inferred to him.

The trial court's instructions were clear that the petitioner must have the requisite specific intent to commit armed robbery. Even assuming the jury instruction was erroneous, viewing it in the context of the jury instructions as a whole and the trial record, it did not have a substantial and injurious effect on the verdict.

Because there was no error in the jury instruction, the failure to object to the instruction was not ineffective assistance of counsel.

## 2. Failure to Request Cautionary Jury Instruction

In the second component of the petitioner's ineffective assistance of counsel claim, he argued that his trial counsel failed to request a cautionary jury instruction regarding the prosecutor's reference to his co-defendants' convictions. Petitioner argued that without a cautionary instruction, the jury was free to infer that because his co-defendants were guilty, he was also guilty.

Even assuming that defense counsel was constitutionally ineffective for failing to request a cautionary jury charge, to prevail on his ineffective assistance of counsel claim, the petitioner must also establish prejudice. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067.

There is no basis upon which to conclude that there is a reasonable probability that, but for counsel's failure to request

a cautionary jury charge, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Sufficient evidence was offered to support the petitioner's convictions. The second component of the petitioner's ineffective assistance of counsel claim is without merit.

### 3. Trial Counsel Interfered with the Right to Testify

In the third component of the petitioner's ineffective assistance of counsel claim he argued that his trial counsel interfered with his right to testify. Specifically, the petitioner argued that his trial counsel advised him not to testify on his own behalf. Petitioner argued that he followed his trial counsel's advice and did not testify.

A criminal defendant has the right to take the stand and testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 2708 (1987). Only the defendant can voluntarily and knowingly waive that right. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). The appropriate vehicle for claims that counsel interfered with a defendant's right to testify is a claim of ineffective assistance of counsel. *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000). There is "a strong presumption that counsel's decision not to place [a defendant] on the stand was sound trial strategy." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). Nonetheless, counsel cannot override the ultimate decision of a defendant who wishes to testify contrary to counsel's

22

advice.  *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002).

Petitioner argued that he wanted to testify during his trial but that his trial counsel advised against it.  Petitioner conceded that after the State rested, he and his trial counsel discussed the reasons counsel was opposed to the petitioner testifying on his own behalf at the trial.  Petitioner conceded that he ultimately accepted his trial counsel's advice.

Even if the petitioner could show that counsel performed deficiently under *Strickland* by effectively denying the petitioner his right to testify, he still must establish that the deficient performance prejudiced his defense.  *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002).  Petitioner has not made this showing.  Petitioner's ineffective assistance of counsel claim is without merit.

### 4. Ineffective Assistance of Counsel on Appeal

In the fourth component of the petitioner's ineffective assistance of counsel claim he argued that appellate counsel failed to assign as error on appeal the same claims in components one through three.

A defendant has a right to effective assistance of counsel on his first appeal.  *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 834-35 (1985).  The failure to brief what ultimately is a meritless issue does not constitute ineffective assistance of

counsel.  *Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981).

To show ineffective assistance of counsel on appeal, the petitioner must first show that his counsel was objectively unreasonable in failing to discover nonfrivolous issues and to file a merits brief raising them.  If he succeeds in such a showing, he then has the burden of demonstrating prejudice.  That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764 (2000).

For the reasons set forth above in the analysis of components one through three of the petitioner's ineffective assistance of counsel claim, petitioner's ineffective assistance of appellate counsel claim is without merit.

For the foregoing reasons, there is no basis upon which to conclude that there is a reasonable probability that, but for the enumerated errors by trial and appellate counsel alleged in the petitioner's ineffective assistance of counsel claim, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  Petitioner's ineffective assistance of counsel claims are without merit.

**Ground 7: *Batson* Challenge**

In his seventh ground for relief, the petitioner argued that

during jury selection the State exercised its peremptory challenges in a racially discriminatory manner, thereby violating his Fourteenth Amendment rights.  Specifically, the petitioner, an African-American, claimed that the trial court erred when it overruled his *Batson* challenge on the ground that the petitioner did not make a prima facie showing that the State had exercised its peremptory challenges on the basis of race.

It has been clearly established since *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986), that claims of racial discrimination in jury selection are analyzed in a three-step process.  *Id*. at 96-98, 106 S.Ct. 1722-24.  First, a defendant must make a prima facie showing that the prosecution has exercised peremptory challenges on the basis of race.  *Id*. at 93-94, 96-97, 106 S.Ct. 1721, 1723.  Second, if a prima facie showing is made, the burden then shifts to the prosecution to articulate a race-neutral reason for the peremptory challenge at issue.  *Id*. at 94, 97-98, 106 S.Ct. 1721, 1723-24.  Third, the trial court must determine whether the defendant has proved purposeful discrimination.  *Id*. at 98, 106 S.Ct. 1724.

To establish a prima facie case, a defendant: (1) must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove members of that group from the venire; (2) is entitled to rely on the fact "that peremptory challenges constitute a jury selection practice

25

that permits 'those to discriminate who are of a mind to discriminate'"; and (3) must show that these facts and circumstances raise an inference that the prosecutor exercised peremptory challenges on the basis of race.  *Id*. at 96, 106 S.Ct. 1723.

To make out a prima facie case, the petitioner needed to show only that the facts and circumstances of his case gave rise to an inference that the State exercised peremptory challenges on the basis of race.  This was a light burden, and the petitioner carried it.

The voir dire transcript showed that of the 48 people in the venire, 37 appeared for voir dire.[43]  Of those 37 who appeared for voir dire, 10 were African-Americans.[44]   The State used seven of the 12 peremptory challenges exercised to strike African-Americans from the jury pool.[45]  One African-American and 11 white jurors were empaneled.[46]

It is clear from the transcript of the voir dire that the trial court accepted the petitioner's complaint about how the prosecutor had exercised the State's peremptory challenges to strike "black" jurors as a *Batson* challenge: "If you're objecting

---

[43] Voir Dire Transcript, p. 219.

[44] *Id*. at 221.

[45] *Id*.

[46] *Id*. at 222.

that the state has attempted to exclude blacks from systematically attempted to exclude blacks from the jury I will accept that as a *Batson* challenge, and I will do what I am supposed to do."[47]

Nonetheless, the trial court did not then reasonably apply *Batson* by first determining whether the petitioner made a prima facie showing that the prosecution had exercised peremptory challenges on the basis of race. One might assume the state court found the petitioner did not make a prima facie showing from the fact that the prosecutor was not asked to articulate a race-neutral reason for the peremptory challenges at issue.[48]  However, such an assumption would not be correct because of what occurred next. Immediately after the above quoted statement the trial court stated:

> And what I am supposed to do is first determine whether or not I believe there has been a systematic exclusion by race or gender.  I do not believe there is any showing of a systematic exclusion based upon the order in which the strikes were made, and who was left on the jury at which time."[49]

*Batson* clearly does not require the defendant to show "systematic exclusion by race" in order to make a prima facie case of racial discrimination in jury selection.  The trial court's

---

[47] *Id.* (italics added).

[48] Although the prosecutor presumably was aware of the need to offer a race-neutral reason for striking African-American jurors in response to a *Batson* challenge, she did not voluntarily offer any reasons for doing so.

[49] *Id.*

apparent imposition of such a burden on the petitioner "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."[50]

The Louisiana First Circuit Court of Appeal rejected the petitioner's *Batson* claim, applying an abuse of discretion standard and relying on *Batson* and *State v. Rodriguez,* 2001-2182 (La.App. 1 Cir. 6/21/02), 822 So.2d 121, writ denied, 2002-2049 (La. 2/14/03), 836 So.2d 131.

> In the instant case, the voir dire transcript reflects that following the selection of the jury, the defendant complained to the trial court about the State's use of peremptory challenges and the fact that the jury has only one African-American member. The court accepted the defendant's argument as a **Batson** challenge, but overruled the objection, finding no systematic exclusion by race or gender on the basis of the order in which the challenges were made and who was left on the jury following the challenges.
> There was no abuse of discretion in the trial court's denial of the **Batson** challenge. In support of the challenge, the defendant relied solely upon the fact that the State had exercised seven of its twelve peremptory challenges against black prospective jurors. However, bare statistics are insufficient to establish a prima facie case of race discrimination under **Batson**. **Rodriguez**, 2001-2182 at 11, 822 So.2d at 130.

*State of Louisiana v. Bobby Smith*, 2003-1263 (La. App. 1st Cir. 4/2/04) at 15-16.

The Louisiana First Circuit Court of Appeal's application of *Batson* was contrary to, or at least was an unreasonable application of, clearly established Federal law for two reasons. First, the

---

[50] 28 U.S.C. § 2254(d)(1).

trial court did not reject the petitioner's *Batson* challenge because it was based solely on statistics. Rather, it was rejected because the petitioner failed to make a showing of "systematic exclusion by race."

The Louisiana Supreme Court itself has rejected the requirement that the defendant must show a "pattern" of strikes to make out a prima facie case under *Batson*:

> Neither the total exclusion of a cognizable group from the jury nor the mere presence of one or two perhaps token members of the group on the jury is dispositive of whether the prima facie requirement is satisfied. "The mere inclusion of some blacks on the jury is no bar to a finding of a prima facie case, and there is not a per se rule that a certain number or percentage of the challenged jurors must be black in order for the court to conclude a prima facie case has been made out." [5 Wayne R. LaFave, et al, Criminal Procedure § 22.3(d)(2nd ed.1999) ] (collecting cases). Such number games, stemming from the reference in *Batson* to a "pattern" of strikes, are inconsistent with the inherently fact-intense nature of determining whether the prima facie requirement has been satisfied. Indeed, such attempts to fashion absolute, per se rules are inconsistent with Batson in which the court instructed trial courts to consider "all relevant circumstances." 476 U.S. at 96-97, 106 S.Ct. 1712.

*State v. Duncan*, 99-2615, p. 21-22 (La. 10/16/01), 802 So.2d 533, 549-50.[51]

---

[51] The Louisiana Supreme Court did go on to state in *Duncan* that "it is important that the defendant come forward with facts, not just numbers alone, when asking the district court to find a prima facie case." This language was taken from *United States v. Moore*, 895 F.2d 484, 485 (8th Cir.1990). Although this is a federal circuit court decision, it is not "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Second, contrary to the reasoning of the Louisiana First Circuit Court of Appeal, statistics combined with other circumstances are sufficient to establish a prima facie case under *Batson*. The recent Fifth Circuit Court of Appeals decision in *Price v. Cain*, which has similar facts, is instructive.[52]

In *Price* the sole issue was whether the defendant made a prima facie showing that the State had exercised its peremptory challenges on the basis of race in violation of *Batson*. There was no dispute that the jury was all white. The jury was selected from a 54-member venire, of which 16 members were African-American. The State used six of its twelve peremptory challenges to strike African-Americans. Price used one peremptory challenge to strike an African-American. After the jury was empaneled, but before the panel was sworn, Price raised a *Batson* challenge.

The following exchange occurred at that time:

Price:    I think that we would interpose at this point a *Batson* challenge because the State, I think this panel is going to be exclusively white.

Court:    ... Make your case.  Is that it?

Price:    Yeah, that's it.  I mean –

Court:    – You better make it better that that ... You make a prima facie case?

Price:    Right.

Court:    So, the fact that the panel ... you think you've stated enough by just saying they're all white?

---

[52] 560 F.3d 284 (5th Cir. 2009).

30

The trial court concluded that the mere statement that the jury was all-white was insufficient to make a prima facie showing to support a *Batson* challenge.[53]

The Fifth Circuit court recounted the U.S. Supreme Court's explanation in *Johnson v. California* of the defendant's prima facie burden on a *Batson* challenge:

> We did not intend the first step to be so onerous that a defendant would have to persuade the judge – on the basis of all the facts, some of which are impossible for the defendant to know with certainty – that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.

*Price*, 560 F.3d at 287, quoting *Johnson v. California*, 545 U.S. 162, 170, 125 S.Ct. 2410, 2417 (2005).

The Fifth Circuit court explained that all *Batson* required was that Price "show only that the facts and circumstances of his case gave rise to an inference that the State exercised peremptory challenges on the basis of race."[54]  The State had used six of its twelve peremptory challenges to strike African-Americans, and the resulting jury was all-white.  Price, an African-American, was tried for the rape of a Chinese-American woman.  Under *Batson*,

---

[53] *Price*, 506 F.3d at 285-86, quoting *Louisiana v. Price*, 917 So.2d 1201, 1210 (La.App. 2 Cir. 2005).

[54] *Price*, 560 F.3d at 287.

these facts and circumstances were "sufficient to permit the trial judge to draw an inference that discrimination has occurred."[55]

Petitioner was charged with the armed robberies of a white victim, Bernd, and an African-American victim, Collier.  The prosecutor exercised seven of the State's twelve peremptory challenges to strike African-American jurors, and the resulting jury had only one African-American member.  Under *Batson*, this is "sufficient to permit the trial judge to draw an inference that discrimination has occurred."   Petitioner was required to do no more to make his prima facie case.

Petitioner's *Batson* claim warrants an evidentiary hearing to determine whether a *Batson* violation occurred.


## RECOMMENDATION

It is the recommendation of the magistrate judge that the petitioner's application for habeas corpus relief be denied as to Grounds 1 through 6.

It is further recommended that counsel be appointed to represent the petitioner, pursuant to Rule 8(c), Rules Governing Section 2254 Cases, and as provided by the Criminal Justice Act, 28 U.S.C. § 3006A(a)(2)(B), and that an evidentiary hearing be held on Ground 7, specifically, whether the State exercised its peremptory

---

[55] *Id.*, quoting *Johnson*, 545 U.S. at 170, 125 S.Ct. 2417.

challenges in a racially discriminatory manner, thereby violating

the petitioner's Fourteenth Amendment rights.

Baton Rouge, Louisiana, June 19, 2009.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

33