UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BOBBY SMITH

VERSUS

N. BURL CAIN, ET AL.

CIVIL ACTION

NO. 08-698-JVP-SCR

## RULING

This matter is before the court on the application of petitioner, Bobby Smith, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On January 26, 2001, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, petitioner was found guilty of two counts of armed robbery and one count of conspiracy to commit armed robbery. Petitioner was sentenced to 58 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on each of the armed robbery counts, and 29 years imprisonment at hard labor on the conspiracy to commit armed robbery count, with all sentences to be served concurrently.

After the convictions and sentences were affirmed on appeal and petitioner's application for supervisory review was denied by the Louisiana Supreme Court, petitioner filed an application for post-conviction relief in the trial court, asserting that: (1) the State withheld exculpatory evidence and introduced false testimony; (2) the trial court erred in failing to give a cautionary jury instruction; (3) the jury instruction on principals was erroneous; and (4) the petitioner received ineffective assistance of counsel.

The trial court denied petitioner's application for post-conviction relief on September 26, 2006.  On July 10, 2007, the Louisiana First Circuit Court of Appeal denied review, and the Louisiana Supreme Court denied review on June 6, 2008. Petitioner then filed the present federal habeas corpus application on October 28, 2008, asserting the following grounds for relief: (1) the evidence was insufficient to support the convictions; (2) the prosecutor withheld exculpatory evidence and introduced perjured testimony; (3) the trial court erred by failing to give a cautionary jury instruction regarding the prosecutor's reference to his co-defendants' convictions; (4) the trial court erroneously instructed the jury on the law of principals; (5) trial counsel interfered with his right to testify; (6) he had ineffective assistance of counsel; and (7) the State exercised its peremptory challenges in a racially discriminatory manner during jury selection.

On August 12, 2009, the court denied petitioner's application for habeas corpus relief as to Grounds 1-6, but did not rule on petitioner's claim that the State violated his Fourteenth Amendment rights by exercising its peremptory challenges in a racially discriminatory manner (doc. 21).  The court did, however, find that petitioner had met his initial burden of setting forth a prima facie claim of discrimination (doc. 18, p. 32).  Accordingly, on October 21, 2009, the court held an evidentiary hearing to address the remaining claim, and the parties then submitted post-hearing memoranda addressing the merits of petitioner's *Batson* claim (docs. 28, 29).

2

At the evidentiary hearing the court heard the testimony of Kim Landrum Brooks, who served as the State's prosecutor in petitioner's trial.  She testified that she used seven of the State's twelve peremptory challenges to strike black venire panelists and that the jury, when seated, had only one black juror.  According to Brooks, she had used a peremptory challenge to strike the first of those seven potential jurors because his nephew had been convicted of armed robbery and had been prosecuted by the East Baton Rouge Parish District Attorney's Office.  The second was struck because he had worked for the Public Defender's Office and had laughed when asked whether he could give the State a fair trial.  The third was struck because he indicated, after a detailed discussion of the law of principals, that he disagreed with it.[1]  The fourth was struck because her brother and nephew had been prosecuted by the East Baton Rouge Parish Attorney's Office and her brother had been shot in the head by police during his arrest.  That venire panelist also indicated that her religious views did not allow her to sit in judgment of another person.  The fifth was struck because she "had an issue with the concept of principals," and because "she had been sitting there all day and had not absorbed one thing that anybody had been saying."  Brooks testified that the sixth was struck because he also had an issue with the concept of principals.  The seventh was struck because she had been very critical of the police with regard to an incident

---

[1]The witness stated that the law of principals was very important in the case because the case involved three defendants, only one of whom had held a weapon during the robberies.

3

involving the arrest of her son, and because she had stated her belief that the police didn't want to help her and didn't do their jobs after she had been the victim of a burglary.

## LAW AND DISCUSSION

It is "clear that the Constitution prohibits all forms of purposeful racial discrimination in selection of jurors." *Batson v. Kentucky*, 476 U.S. 79, 88, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69 (1986). Claims of racial discrimination in jury selection are analyzed in a three-step process: (1) First, the defendant must make a prima facie showing that the prosecution has exercised peremptory challenges on the basis of race; (2) Second, if defendant makes that prima facie showing, the burden shifts to the prosecution to articulate a race-neutral reason for the peremptory challenge at issue; and (3) Third, if the prosecution articulates a race neutral reason for the challenges at issue, then the court has a duty to determine if the defendant has established purposeful discrimination. *Id.* at 93-98.

After reviewing the testimony provided at the evidentiary hearing, the court finds that the prosecution has articulated race neutral reasons for the peremptory challenges. The court, therefore, turns to the final step of the analysis—the determination of whether the petitioner has established purposeful discrimination.

"To secure habeas relief, petitioner must demonstrate that a state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and that the corresponding factual

4

determination was 'objectively unreasonable' in light of the record before the court."

*Miller-El v. Cockrell*, 537 U.S. 322, 347, 123 S.Ct. 1029, 1045, 154 L.Ed.2d 931

(2003).

Petitioner argues that:

> When the state struck three African-Americans in a row, unguarded comments made at a bench conference revealed the open secret of racial prejudice at work in the voir dire.  The prosecutor, Ms. Landrum, cut Ms. Norman (no. 237), Mr. Williams (no. 331), and Ms Flowers (no. 292) in one fell swoop[.] [D]efense counsel, Mr. Norris said, "That doesn't surprise me."  Ms. Landrum, in unrestrained candor responded, "I wouldn't think." (Transcript p. 209).  Although at the evidentiary hearing, the [sic] Ms. Landrum offered rationales for cutting those jurors, nothing of significance was developed on the record at trial.

(Doc. 29, pp. 2-3).

Nothing in the exchange referenced by petitioner in the above paragraph, however, suggests any purposeful discrimination by the prosecutor.  It indicates only that the peremptory challenges asserted against those three venire panelists were expected by the defense counsel, and that the prosecutor was not surprised that counsel for the defense expected them.  The record shows that defense counsel did not immediately raise a *Batson* challenge as would be expected if, as petitioner suggests, the exchange "revealed the open secret of racial prejudice at work in the voir dire."[2]  Moreover, given the record developed at trial, it is not surprising that the

---

[2]The record further demonstrates that the allegation of racial impropriety was made not by defense counsel at all, but by the petitioner, himself, at a later point.

5

defense counsel might expect those peremptory challenges for reasons unrelated to race.

The record demonstrates that the three panelists at issue were in the third venire panel of day, and according to the prosecutor's uncontroverted testimony, they had been present while she had explained pertinent legal issues to the previous two panels.  The record also demonstrates that the prosecutor referred to her previous discussions of legal principles and then asked Ms. Norman if she understood what armed robbery is.  The panelist answered "[n]o, not really." (Transcript, p. 599-600).  When asked whether she understood what conspiracy is, the panelist at first indicated that she did, but then admitted,  "I really don't know." (*Id.* at 600-01).  She also said that she didn't understand the example that had been previously offered to explain the concept of principals and later indicated that she "got confused."  (*Id.* at 601-02).

The record also demonstrates that Mr. Williams stated that he had "a problem with [the legal concept of principals] because it's - - to me it seems like it is clustered with everybody in it.  And it is just one guilty party, that one that committed the murder.  Whether he acted with someone or not, the one that did the crime should pay the penalty."  (Transcript, p. 603).

Ms. Flowers stated that she had a problem with police work after her house was burglarized.  (Transcript, p. 594).  After indicating that she was disappointed

6

with police, she stated,  "[w]e told the police where it was and who they were, but of course no one pursued."  (*Id.* at 594, 606).

Accordingly, the court finds that the record supports the reasons given by the State for the peremptory challenges of Ms. Norman, Ms. Flowers and Mr. Williams.

Petitioner also argues that a comparative analysis of the questions asked white and black panel members demonstrates a disparity in the way they were treated (doc. 29, p. 6).  The Fifth Circuit has set forth the following principles to guide courts in conducting such a comparative analysis:

> First, we do not need to compare jurors that exhibit all of the exact same characteristics. If the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, this is evidence that the asserted justification was a pretext for discrimination, even if the two jurors are dissimilar in other respects.  Second, if the State asserts that it was concerned about a particular characteristic but did not engage in meaningful voir dire examination on that subject, then the State's failure to question the juror on that topic is some evidence that the asserted reason was a pretext for discrimination.  Third, we must consider only the State's asserted reasons for striking the black jurors and compare those reasons with its treatment of the nonblack jurors.

*Reed v. Quarterman*, 555 F.3d 354, 376 (5th Cir. 2009) (internal citations omitted).

Petitioner argues that racial disparity in the treatment of panel members is evidenced by the fact that "[o]nly Ms. Norman and Mr. Williams were subjected to the law professor treatment, forcing them to explain their understanding of the minutiae of the law" (doc. 29, p. 6).  As noted above, however, Ms. Norman indicated

that she didn't know what the term "armed robbery" meant, and after initially stating that she understood the concept of conspiracy, she later admitted that she did not. She also stated that she had problems with the concept of principals and that she had gotten confused.   Then, immediately after the prosecutor explained the legal concept of principals to Ms. Norman, Mr. Williams stated that he still had a problem with it.

The record demonstrates that, prior to the discussions with Ms. Norman and Mr. Williams, and in their presence, the prosecutor had repeatedly explained the legal concepts to other panelists in detail, had given examples to demonstrate the concepts, and had asked and answered panelists' questions about the concepts. *See* (Transcript, pp. 54- 58, 67, 155-159).  Thus, the court finds nothing unusual in the manner in which the prosecutor addressed the legal issues with Ms. Norman and Mr. Williams.  More importantly, however, petitioner has pointed to no other panelists who were similarly situated without being engaged in meaningful voir dire on the subject at issue.   Accordingly, the court finds that petitioner has failed to establish purposeful discrimination as is required by the third-step of the *Batson* analysis.

## CONCLUSION

For the foregoing reasons, the court concludes that petitioner has failed demonstrate by clear and convincing evidence that the state court's finding of the absence of purposeful discrimination was incorrect and that the corresponding factual determination was unreasonable in light of the record before the court.

8

Having so concluded, and in light of the court's previous dismissal of all other grounds set forth in petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (doc. 21), the court shall issue judgment in favor of the State and against petitioner, Bobby Jones, dismissing, with prejudice, petitioner's application for a writ of habeas corpus.

Baton Rouge, Louisiana, June 23, 2010.


RALPH E. TYSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA